FILED

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2012 AUG 22 PM 1:35

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

Case No.: 6:12-cv-1294-Orl-28DAB

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

        Plaintiff,

v.

INDUSTRIAL COMMERCIAL STRUCTURES,
INC., BRYAN A. JOHNSON, and
CHERYL JOHNSON,

        Defendants.

_____/

## COMPLAINT

Plaintiff, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA ("Travelers"), through its counsel, hereby sues Defendants, INDUSTRIAL COMMERCIAL STRUCTURES, INC. ("ICS"), BRYAN A. JOHNSON, and CHERYL JOHNSON (sometimes collectively referred to herein as the "Indemnitors"), and alleges:

### PARTIES, JURISDICTION, AND VENUE

1. This Court has jurisdiction over the parties pursuant to 28 U.S.C. §1332(a) because Plaintiff and Defendants are citizens of diverse states.

2. Travelers is a foreign corporation, which was incorporated in Connecticut, with its principal place of business in Hartford, Connecticut.

3. ICS is a Florida corporation, which was incorporated in Florida, with its principal place of business in Orange County, Florida.

4. Defendant Bryan A. Johnson is a Florida citizen who resides in Winter Park, Florida, in Orange County.

5. Defendant Cheryl Johnson is a Florida citizen who resides in Winter Park, Florida, in Orange County.

6. The causes of action alleged herein fall within the jurisdictional limits of the Court because Travelers seeks to recover more than $75,000.00 from the Indemnitors.

7. Venue is appropriate in this Court because one or more of the Defendants reside in or have their principal place of business within the boundaries of the Middle District of Florida, and because one or more Defendants reside in or have their principal place of business located in one of the counties within the province of the Orlando Division of this Court.

## GENERAL ALLEGATIONS

8. As part of its business, Travelers issues performance surety bonds for selected construction contractors.

9. ICS is a general contractor that from time to time required surety performance bonds on various construction projects.

10. ICS applied for bonding with Travelers.

11. On or about February 21, 2008, before Travelers issued any bond naming ICS as principal, the Indemnitors each signed a General Agreement of Indemnity ("Agreement") in favor of Travelers, its affiliates, and its agents. A true and correct copy of the Agreement is attached hereto and incorporated herein as **Exhibit "A."**

12. The Indemnitors signed the Agreement to induce Travelers to issue a performance bond naming ICS as principal.

13. The execution of the Agreement, and the Indemnitors' undertaking of the various responsibilities and obligations contained therein, were absolute conditions precedent and prerequisites to Travelers issuing any bond naming ICS as a principal.

14. The Agreement provides that the term "Company" shall mean:

> Travelers Casualty and Surety Company of America, St. Paul Fire and marine Insurance Company, any of their present or future direct or indirect parent companies, any of the respective present or future direct or indirect affiliates or subsidiaries of such companies and parent companies, and/or any of the aforementioned entities' successors or assigns.

15. According to the Agreement, the Indemnitors agreed, in part, to "exonerate, indemnify and save Company harmless from and against all Loss."

16. The Indemnitors further agreed,

> An itemized, sworn statement by an employee of Company, or other evidence of payment, shall be prima facie evidence of the propriety, amount and existence of Indemnitors' liability. Amounts due to Company shall be payable upon demand.

17. The Indemnitors further agreed,

> Company shall have the right, in its sole discretion, to determine for itself and indemnitors whether any claim, demand or suit brought against Company or any Indemnitor in connection with or relating to any Bond shall be paid, compromised, settled, tried, defended or appealed, and its determination shall be final, binding and conclusive upon the Indemnitors. Company shall be entitled to immediate reimbursement for any and all Loss incurred under the belief it was necessary or expedient to make such payments.

18. The Indemnitors further agreed,

> Indemnitors agree to deposit with Company, upon demand, an amount as determined by Company sufficient to discharge any Loss or anticipated Loss. Indemnitors further agree to deposit with Company, upon demand, and amount equal to the value of any assets or Contract funds improperly diverted by any Indemnitor. Sums deposited with Company pursuant to this paragraph may be

used by Company to pay such claim or be held by Company as collateral security against any Loss or unpaid premium on any Bond. Company shall have no duty to invest, or provide interest on, the deposit. Indemnitors agree that Company would suffer irreparable damage and would not have an adequate remedy at law if Indemnitors fail to comply with the provisions of this paragraph.

19. Finally, the Indemnitors agreed,

Indemnitors shall furnish upon demand, and Company shall have the right of free access to, at reasonable times, the records of Indemnitors including, but not limited to, books, papers, records, documents, contracts, reports, financial information, accounts and electronically stored information, for the purpose of examining and copying them. Indemnitors expressly authorize Company to access their credit records, including, but not limited to, account numbers and/or account balances from financial institutions.

20. The Agreement is unequivocal and specific in setting forth the Indemnitors' obligations to indemnify, and keep Travelers indemnified, "from and against all Loss" as a result of executing the Bond or because of the Indemnitors' failure to comply with the Agreement.

21. The Agreement is unequivocal and specific in setting forth the Indemnitors' obligations to collateralize, and keep Travelers collateralized, "sufficient to discharge any Loss or anticipated Loss" as a result of executing the Bond or because of the Indemnitors' failure to comply with the Agreement.

22. The Agreement is unequivocal and specific in setting forth the Indemnitors' obligations to "furnish upon demand" and provide Travelers with "free access to" the Indemnitors books and records.

23. The term "Loss" is defined by the Agreement as:

All loss and expense of any kind or nature, including attorneys' and other professional fees, which Company incurs in connection with any Bond or this Agreement, including but not limited to all loss and expense incurred by reason of Company's (a) making any investigation in connection with any Bond; (b) prosecuting or

defending any action in connection with any Bond; (c) obtaining the release of any Bond; (d) recovering or attempting to recover Property in connection with any Bond or this Agreement; (e) enforcing by litigation or otherwise any of the provisions of this Agreement; and (f) all interest accruing thereon at the maximum legal rate.

24. Following the Indemnitors' execution of the Agreement, and in consideration for the Indemnitors' promise to comply with the terms of the Agreement, Travelers agreed to issue a bond naming ICS as principal at the request of one or more of the Indemnitors.

25. Specifically, Travelers issued performance bond numbered 104841624 (the "Bond") for construction of a private residence located at 291 South Beach Road, Jupiter Island, Florida (the "Project"), naming ICS as principal. The owner/obligee under the Bond was Christos Kritikos ("Obligee").

26. In August of 2007, the Obligee executed an assignment to Jupiter Holding Co, LLC ("JHC") whereby Obligee assigned "all rights and interests arising from or concerning all legal or equitable causes of action or claims whether in contract, tort or otherwise concerning the design or construction of the property located at 291 S. Beach Road, Jupiter Island, Florida."

27. Subsequently, JHC filed suit against Travelers for breach of the Bond, arising out of ICS' allegedly defective or incomplete work, abandonment of the projects, and delay (the "Lawsuit").

28. When ICS refused or was unable to resolve the Lawsuit, Travelers was forced to hire consultants and the undersigned attorneys to respond to, investigate, and defend against the Lawsuit.

29. As a result of ICS' failure to do so, Travelers has incurred attorney's fees and consultants' fees, expenses, and costs to investigate, adjust and defend the Lawsuit, and

continues to incur such attorneys' fees and consultants' fees as part of its efforts to investigate, and defend the Lawsuit.

30. Travelers has demanded that the Indemnitors reimburse it for all Loss incurred as a result of investigating, litigating, and defending the Lawsuit, and demanded the posting of collateral security sufficient to protect Travelers from continuing Loss. ("Demands").

31. Despite the Demands, the Indemnitors have failed and refused to indemnify and collateralize Travelers for the Loss it has and continues to suffer as a result of issuing the Bond.

32. Additionally, Travelers has demanded to inspect and copy the Indemnitors records pursuant to paragraph 10 of the Agreement. Despite Travelers demands, Indemnitors have failed to produce all requested books and records to Travelers.

33. Travelers has retained the undersigned attorneys to represent it in this action, and is obligated to pay these attorneys a reasonable fee for their services rendered.

34. All conditions precedent to maintaining this action have occurred, been excused, or otherwise been waived.

## COUNT I
### (Breach of Contract / Contractual Indemnity against Indemnitors)

35. Travelers realleges and incorporates the allegations in paragraphs 1 through 34 as if fully set forth herein.

36. The Indemnitors have committed various breaches and defaults of the Agreement by, among other things:

   a. failing and refusing to pay, satisfy or resolve the Obligee's claims;

    b. failing to indemnify Travelers, despite the Demands, for the Loss incurred, including attorneys' fees, consultants' fees, and other costs and expenses that Travelers incurred as a result of issuing the Bond;

    c. failing to collateralize Travelers for the continuing and anticipated Loss that will be incurred as a result of issuing the Bond; and

    d. failing to furnish Travelers with access to all of Indemnitors' books and records requested after receipt of numerous demands from Travelers.

37. As a result of the Indemnitors' breaches of the Agreement, Travelers has suffered damages, including but not limited to the following, which continue to accrue, and thus Travelers' damages are continuing in nature:

    a. the attorneys' fees, consultants' fees, and other costs and expenses that Travelers has incurred and continues to incur as a result of issuing the Bond.

38. Pursuant to the Agreement, the Indemnitors agreed to pay Travelers interest at the maximum allowable rate on all payments Travelers makes as a result of issuing the Bond. Consequently, Travelers seeks an award granting it prejudgment interest at 18% per annum for all recoverable damages.

39. Travelers is entitled to specific performance of the Collateral Security provision in paragraph 5 of the Agreement.

40. Travelers is entitled to specific performance of the Books, Records and Credit provision in paragraph 10 of the Agreement.

41. Travelers is entitled to an award of its attorneys' fees and costs in pursuing this indemnity action according to the Agreement.

WHEREFORE, Travelers demands judgment against the Indemnitors, jointly and

severally, for damages, specific performance, costs of this action, prejudgment interest, attorneys' fees, and such further relief as this Court deems proper.

## COUNT II
### (Common Law Indemnity against ICS)

42. Travelers realleges and incorporates paragraphs 1 through 34, as if fully set forth herein.

43. Travelers is without fault for the Lawsuit.

44. Travelers had a "special relationship" with ICS by virtue of issuing the Bond, which would make Travelers liability under the Bond, if any, merely technical, secondary, and vicarious to that of ICS, which is actively and completely at fault for, and obligated to timely pay, any underlying liability on the Bond, including, without limitation, any liability in the Lawsuit.

45. As a direct and proximate result of ICS' failure to honor its obligations, Travelers has incurred and continues to incur damages, losses and expenses, including attorneys' fees and costs, by reason of having executed the Bond.

46. ICS is liable to Travelers for all losses, expenses, and attorneys' fees sustained by reason of having executed the Bond including, without limitation, all attorneys' fees, consultant fees, costs and expenses Travelers incurs as a result of issuing the Bond.

47. As a result of issuing the Bond, Travelers has incurred damages, including but not limited to attorneys' fees, consultant fees, costs and expenses which are continuing in nature.

48. Travelers is entitled to receive its reasonably incurred attorneys' fees pursuant to applicable Florida law.

WHEREFORE, Travelers requests that this Court enter judgment against ICS for damages, attorneys' fees, prejudgment interest, costs, and such further relief as this Court deems proper.

## COUNT III
### (Quia Timet)

49. Travelers realleges and incorporates the allegations in paragraphs 1 through 41 above, as if fully set forth herein.

50. As a result of issuing the Bond, Travelers has already been called upon, and believes it will be called upon in the future, to pay ICS' debts and/or perform ICS' obligations.

51. The Indemnitors are obligated to indemnify and keep Travelers indemnified from any liability for any losses or expenses.

52. Travelers is entitled to be fully collateralized by the Indemnitors before making payments in discharge of any alleged obligations under the Bond.

53. Indemnitors have failed and/or refused and continue to refuse to perform their obligations and Travelers fears that it will suffer further damages due to Indemnitors' alleged defaults on the Project, their failure to satisfy the Lawsuit, and their failure to honor their obligations to Travelers.

54. Unless the Court immediately grants the requested relief, Travelers will not be adequately secured and/or collateralized for potential obligations under the Bond prior to making any necessary and appropriate payments. In addition, Travelers will be forced to incur attorneys' fees, consulting fees, and costs to investigate, defend against, and/or resolve the Lawsuit – costs for which the Indemnitors agreed to fully collateralize Travelers.

55. Further, if the Court does not grant the requested relief, the Indemnitors may sell, transfer, dispose, lien, secure, or otherwise divert assets, thereby preventing Travelers' access to

these assets for discharging the obligations of the Indemnitors to exonerate and indemnify Travelers. Such actions would irreparably harm Travelers.

56. Travelers is without a plain, speedy, or adequate remedy at law, and will be irreparably and permanently injured if this Court does not grant the relief sought below.

57. Travelers has already been sued by JHC under the Bond. Consequently, Travelers is threatened with having to incur additional attorneys' fees, consultant fees, costs and expenses to defend, satisfy or resolve the Lawsuit and is reasonably in fear of further loss.

58. Travelers' current monetary exposure as a result of the Lawsuit is in excess of $2,000,000, which amount does not include Travelers' potential liability for attorneys' fees, interest, or costs.

59. Travelers' fear of further loss is reasonable based on the allegations in this Complaint, and because Travelers faces further exposure and liability in excess of $2,000,000 as a result of the Lawsuit.

60. Travelers is entitled to compel Indemnitors to post suitable collateral to secure Travelers against any alleged liability, losses, or expenses.

61. Travelers is entitled to a full and complete accounting of all assets owned by the Indemnitors, and full and complete access to all financial books, records, and accounts maintained by the Indemnitors.

62. Additionally, Travelers is entitled to an award of its attorneys' fees and costs in pursuing this claim.

WHEREFORE, Travelers requests that this Court enter an Order:

a. preventing the Indemnitors from diverting or disbursing any funds relating to the Bond or Project named in the General Allegations without Travelers' express and written approval;

b. compelling the Indemnitors to post suitable collateral to secure Travelers against any alleged liability, losses, or expenses;

c. attaching or freezing the Indemnitors' assets until appropriate collateral is posted to adequately protect Travelers;

d. requiring the Indemnitors to render to Travelers a full and complete accounting of all assets owned by them or in which they, jointly or severally, have any interest;

e. requiring the Indemnitors to allow Travelers full and complete access to all financial books, records, and accounts maintained by or for them;

f. permanently enjoining and restraining the Indemnitors from selling, transferring, disposing of, or liening any assets or property, and further enjoining and restraining the Indemnitors from allowing any assets or property to be liened, unless and until Travelers shall be placed in funds;

g. granting a lien upon all assets and property, including realty, personalty and mixed, in which the Indemnitors have any interest. Travelers further requests that such lien(s) shall secure Travelers against any loss it may sustain or incur by virtue of its having executed the Bond. Travelers further requests that such lien(s) remain in effect unless and until Travelers is placed in funds as requested hereinabove;

h. requiring the Indemnitors, jointly and severally, to pay all attorneys' fees, costs, and expenses that Travelers has incurred;

i. granting such further relief as this Court deems just and proper.

s/ Kevin M. Mekler
E.A. "SETH" MILLS, JR., ESQ
Florida Bar No. 339652

        smills @mpdlegal.com
        KEVIN M. MEKLER, ESQ.
        Florida Bar No. 0856711
        kmekler@mpdlegal.com
        MILLS PASKERT DIVERS
        100 N. Tampa St., Ste. 3700
        Tampa, FL 33602
        Telephone: (813) 229-3500
        Facsimile: (813) 229-3502
        *Attorneys for Plaintiff*