**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**TRAVELERS CASUALTY AND SURETY**
**COMPANY OF AMERICA,**

> **Plaintiff,**

**-vs-**                                            **Case No.  6:12-cv-1294-Orl-28DAB**

**INDUSTRIAL COMMERCIAL**
**STRUCTURES, INC., BRYAN A.**
**JOHNSON, and CHERYL JOHNSON,**

> **Defendants.**

_____

# ORDER

This case is before the Court on the Motion for Preliminary Injunction Seeking Specific

Performance of General Agreement of Indemnity (Doc. 6) filed by Plaintiff, Travelers

Casualty and Surety Company of America ("Travelers").  The Court has considered the

Motion, Defendants' Response thereto (Doc. 14), and argument of counsel at a hearing held

on October 2, 2012, (see Mins., Doc. 17).  As set forth below, Travelers's motion is granted

in part and denied in part.

## I.  Background

As their names suggest, Travelers is a surety company and Defendant Industrial

Commercial Structures, Inc. ("ICS") is a building contractor.  In February 2008, Travelers

issued a performance bond in the amount of $4,927,670.00 on an ICS residential

construction project on Jupiter Island, Florida.  (Ex. C to Engel Aff., Doc. 2-4).  In connection

with the issuance of that bond, all three Defendants executed a General Agreement of

Indemnity ("GAI").  (GAI, Ex. A to Doc. 1).

In the GAI, the Defendants—referred to as "Indemnitors" therein—agreed to indemnify Travelers against all "Loss" incurred in connection with the bond or the GAI.  (GAI ¶ 3).  The GAI also contains a paragraph titled "Collateral Security" ("the Collateral Security provision") that provides in part:  "Indemnitors agree to deposit with [Travelers], upon demand, an amount as determined by [Travelers] sufficient to discharge any Loss or anticipated Loss." (Id. ¶ 5).  "Loss" is defined in the GAI as "[a]ll loss and expense of any kind or nature, including attorneys' and other professional fees, which [Travelers] incurs in connection with any Bond or this [GAI]."  (Id. ¶ 1).

In November 2009, ICS filed a lawsuit in state court against the owner of the residential project and his assignee.  In that lawsuit, which is currently pending in the Nineteenth Judicial Circuit in and for Martin County, Florida, ICS alleged that the owner had wrongfully terminated ICS from the project; ICS asserted claims of breach of contract, quantum meruit, and foreclosure of lien.  (See State Court Complaint, Ex. A to Doc. 14).  In their Second Amended Answer filed in that suit in February 2011, the owner and his assignee asserted counterclaims against ICS for breach of contract, fraudulent lien, and breach of fiduciary duty, and they also asserted a claim against Travelers for breach of the performance bond.  (See Doc. 2-3).

After the counterclaims were filed, Travelers sent several letters to Defendants demanding a deposit of money pursuant to the Collateral Security provision of the GAI.  (See

Exs. 4 & 5 to Engel. Aff., Docs. 2-6 & 2-7).[1]  In a letter dated March 21, 2012, Travelers demanded deposit of $1.5 million.  (Doc. 2-6).  Then, in a letter dated July 13, 2012, Travelers noted that it had "exhausted the $139,196.45 that [Defendants] previously provided as collateral security," estimated its potential exposure to the owner at $3 million, and stated that it was "willing to take a partial payment of the current Collateral Demand in the amount of $300,000, which amount represents Travelers's estimated legal fees, expert fees, and expenses through trial."  (Doc. 2-7).  It is undisputed that Defendants have not provided any more collateral security in response to that July 13 demand.  It is also undisputed that the underlying lawsuit between the owner and the parties to this case is hotly contested; ICS vigorously disputes the owner's counterclaims, and Travelers has challenged the owner's compliance with conditions precedent for recovery on the bond.[2]

Travelers initiated the instant lawsuit on August 12, 2012, by filing a Complaint (Doc. 1) alleging claims of breach of contract, common law indemnity, and *quia timet*.  That same day, Travelers also filed an "Emergency" Motion to Require the Indemnitors to Exonerate Travelers and to Deposit Collateral Security (Doc. 2).  The Court denied Travelers's "Emergency" motion and directed Travelers to file a motion for preliminary injunction if it was seeking preliminary relief.  (Order, Doc. 4).  Travelers then filed the Motion for Preliminary Injunction Seeking Specific Performance of General Agreement of Indemnity (Doc. 6) that

---

[1]Only two letters have been submitted into the record, but those letters refer to other demand letters.  (See Docs. 2-6 & 2-7).

[2]The parties report that Travelers's motion for summary judgment is scheduled to be heard by the state court on November 8, 2012, and trial is scheduled to begin on November 26, 2012.

is now before the Court.  In this motion, Travelers seeks an injunction:  requiring Defendants

to post $1.5 million in collateral; prohibiting Defendants from transferring or encumbering

assets until it has posted that collateral; requiring a full accounting of Defendants' assets;

and requiring Defendants to allow Travelers to have full access to Defendants' books and

records.

## II.  Discussion

In its preliminary injunction motion, Travelers seeks specific performance of the

Collateral Security provision of the GAI.  Typically, "[a] district court may grant injunctive

relief only if the moving party shows that: (1) it has a substantial likelihood of success on the

merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened

injury to the movant outweighs whatever damage the proposed injunction may cause the

opposing party; and (4) if issued, the injunction would not be adverse to the public interest."

Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc).  "'A preliminary injunction

is an extraordinary and drastic remedy not to be granted unless the movant clearly

establishes the burden of persuasion as to the four requisites.'" All Care Nursing Servs., Inc.

v. Bethesda Mem'l Hosp., 887 F.2d 1535, 1537 (11th Cir. 1989) (quoting United States v.

Jefferson Cnty., 720 F.2d 1511, 1519 (11th Cir. 1983)) (internal marks omitted).

Moreover, under Florida law, "[a] decree of specific performance is an equitable

remedy granted at the discretion of the trial court."  Invego Auto Parts, Inc. v. Rodriguez, 34

So. 3d 103, 104 (Fla. 3d DCA 2010).  "It can be granted only when '1) the plaintiff is clearly

entitled to it, 2) there is no adequate remedy at law, and 3) the judge believes that justice

requires it.'"  Id. (quoting Castigliano v. O'Connor, 911 So. 2d 145, 148 (Fla. 3d DCA 2005)).

-4-

Travelers has established entitlement to preliminary injunctive relief requiring compliance with the Collateral Security provision. The vast majority of courts addressing this issue have awarded specific performance to sureties in similar circumstances, and all of the requisites of a preliminary injunction are satisfied here.

As one federal court of appeals has succinctly explained, "[a] collateral security provision provides that once a surety . . . receives a demand on its bond, the indemnitor must provide the surety with funds which the surety is to hold in reserve. If the claim on the bond must be paid, then the surety will pay the loss from the indemnitor's funds; otherwise, the surety must return the funds to the indemnitor." Safeco Ins. Co. of Am. v. Schwab, 739 F.2d 431, 433 (9th Cir. 1984). Moreover, "[s]ureties are ordinarily entitled to specific performance of collateral security clauses." Id. This is because "'[i]f a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced.'" Id. (quoting Marine Midland Trust Co. v. Allegheny Corp., 28 F. Supp. 680, 683-84 (S.D.N.Y. 1939)).

Analyzing the traditional preliminary injunction factors, Travelers has established all four requirements as to some of the relief it requests. First, Travelers has established a likelihood of success on the merits. Although Defendants assert that this element goes to the likelihood of the owner's success in the underlying suit—and, in turn, the likelihood that Travelers will ultimately have to make payment on the bond—the salient question is whether Travelers has established a likelihood of success on the merits of the claim it asserts in this

case of breach of the collateral security provision.[3]

It is undisputed that Defendants have not made payment under the Collateral Security provision in response to Travelers's July 13 demand letter, though the terms of that letter do reflect a prior payment by Defendants.  As earlier noted, in that demand letter Travelers requested $300,000—the amount of Travelers's estimated legal fees, expert fees, and expenses through trial in the underlying lawsuit.  (See Doc. 2-7).  Travelers previously had demanded $1.5 million in collateral security, and the amount at stake in the underlying suit is vigorously debated.

Defendants argue that Travelers must show Defendants are in financial difficulty or are secreting assets in order to obtain a deposit of collateral security, but this contention is rejected.  As earlier noted, "[s]ureties are ordinarily entitled to specific performance of collateral security clauses" because "the surety 'bargained for a collateral security clause to protect it from the impending risks of liability.'"  Hanover Ins. Co. v. Holley Constr. Co. & Assocs., Inc., No. 4:11-CV-41 (CDL), 2012 WL 398135, at *5 (M.D. Ga. Feb. 7, 2012); see also Int'l Fid. Ins. Co. v. Solutions to Every Problem, Inc., No. 3:12-CV-37, 2012 WL 2576775, at *6 (E.D. Tenn. July 3, 2012) (noting that under the parties' indemnity agreement "the duty to collateralize exists regardless of whether defendants will be obligated to indemnify plaintiff").  Defendants have not established that their financial viability or lack of

---

[3]Travelers's preliminary injunction motion is grounded in the breach of the Collateral Security provision of the GAI and not in Travelers's claims of common law indemnity or *quia timet*.

-6-

distress provides a basis for not enforcing the Collateral Security provision[4]; if this provision is not enforced via specific performance at this stage of the case, it would be rendered meaningless.   The Court concludes that Travelers has established an "anticipated Loss"—the term used in the Collateral Security provision—in the amount of $300,000 as demanded in its July 13 letter.

Second, Travelers has shown that it will be irreparably injured if Defendants are not compelled to comply with the Collateral Security provision and that it has no adequate remedy at law.   Defendants argue that the alleged harm does not amount to irreparable injury and that Travelers can be made whole through the payment of money after the underlying suit is resolved.   However, the nature of the injury in collateral security provision cases is the lack of collateralization while claims are pending, and nothing can remedy that injury after the fact.   See, e.g., Int'l Fid. Ins. Co. v. Waterfront Grp. NC, LLC, No. 3-11-cv-00116-W, 2011 WL 4715155, at *4 (W.D.N.C. Oct. 6, 2011) (noting that "[c]ourts routinely recognize that a surety's loss of its right to collateralization cannot be adequately remedied through monetary damages" and collecting cases (quotation and citation omitted)).[5]

---

[4]A Florida case on which Defendants rely—Transamerica Premium Ins. Co. v. Cavalry Constr., Inc., 552 So. 2d 225 (Fla. 5th DCA 1989)—is not to the contrary.   That case discussed both contractual and quia timet rights.   The trial court had awarded $250,000 in injunctive relief for sums admittedly owed by the principal to its suppliers and subcontractors, and the appellate court affirmed the trial court's conclusion that "additional quia timet relief was not appropriate."   Id. at 227.

[5]Defendants rely on several cases from the Second Circuit Court of Appeals in which the surety's alleged harm was found not to be irreparable—Abish v. Nw. Nat'l Ins. Co. of Milwaukee, 924 F.2d 448, 453 (2d Cir. 1991) ("The nature of the relief sought being monetary compensation, there is no reason why [the surety] cannot be made whole upon resolution of the merits."), Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh, 934 F.2d 30, 35

In sum, the second preliminary injunction element is met with regard to the $300,000 demand.  However, Travelers has not established that it would be irreparably harmed if it not also awarded an accounting, a prohibition on transfer of Defendants' assets, or access to Defendants' books and records; thus, none of this further requested relief will be granted.

Third, the threatened damage to Travelers in the absence of an injunction outweighs any potential harm Defendant might suffer if an injunction is granted.  Travelers is only asking the Court to require Defendants to do that which Defendants contractually agreed to do.  See, e.g., Holley Constr. Co., 2012 WL 398135, at *6 ("Although Defendants may suffer harm as the result of the injunction, this harm is the result of enforcement of an Indemnity Agreement which Defendants entered; an injunction would only require Defendants to do that which they agreed to do."); Waterfront Grp., 2011 WL 4715155, at *5 ("Granting the injunction would require Defendants to perform as they contractually-obligated themselves

_____

(2d Cir. 1991) (concluding that the surety "has failed to demonstrate why the possible loss of its suretyship rights, standing alone, will cause it to suffer irreparable harm; it can be fully compensated by the ultimate determination on the merits"), and Nw. Nat'l Ins. Co. of Milwaukee v. Alberts, 937 F.2d 77, 82 (2d Cir. 1991) (relying on Borey and Abish in finding failure of surety to establish irreparable harm).  However, those cases dealt with common law *quia timet* rights rather than a collateral security provision; in a recent unpublished decision, the Second Circuit distinguished Borey on this basis.  See Safeco Ins. Co. of Am. v. Hirani/MES, JV, Nos. 10-5161-cv(Lead), 10-5203-cv(Con), 2012 WL 1560668, at *2 (2d Cir. May 4, 2012) (noting that Borey "involved a surety's rights of *quia timet* and indemnification, with no indication that the surety agreement provided for collateral," and stating with regard to irreparable injury that "[w]here a surety 'bargained for collateral security and . . . failed to receive it, [the surety]'s injury is real and immediate'" (quoting Am. Motorists Ins. Co. v. United Furnace Co., 876 F.2d 293, 300 (2d Cir. 1989))).  As the Borey court explained, "[*q*]*uia timet* is the right of a surety to demand that the principal place the surety 'in funds' when there are reasonable grounds to believe that the surety will suffer a loss in the future because the principal is likely to default on its primary obligation to the creditor." 934 F.2d at 32.

to do."). Accordingly, the third prerequisite for preliminary injunctive relief has been met.

Finally, the public interest weighs in favor of the granting of an injunction. Courts have recognized that the public interest favors enforcement of contracts as well as solvency of sureties. <u>See, e.g.</u>, <u>Developers Sur. & Indem. Co. v. Elec. Serv. & Repair, Inc.</u>, Case No. 09-21678-CIV, 2009 WL 3831437, at *2 (S.D. Fla. Nov. 16, 2009) ("[T]o the extent that the public has any interest in the instant proceedings, such interest would be in seeing that contractual agreements between parties are upheld and in the continued solvency of surety companies for the public benefit." (emphasis removed)).  Thus, the fourth and final prerequisite has been satisfied.

The parties have not addressed what amount of a bond should be required for issuance of the injunction,[6] though Travelers does—in addressing the potential harm to Defendants—cite and quote a case that states that the posting of an injunction bond would alleviate that potential harm.  (<u>See</u> Doc. 6 at 13 (citing <u>Developers Sur.</u>, 2009 WL 3831437, at *2)).  This Court will require an injunction bond in the same amount as that required by the <u>Developers</u> court.

III.  Conclusion

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. The Motion for Preliminary Injunction Seeking Specific Performance of General Agreement of Indemnity (Doc. 6) filed by Travelers is **GRANTED in part** and **DENIED in**

---

[6]<u>See</u> Fed. R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.").

**part**.   The motion is **GRANTED** insofar as Defendants shall be ordered to deposit $300,000.00 in collateral security as set forth below.   In all other respects, the motion is **DENIED**.

2.  **On or before Friday, October 12, 2012**, Travelers shall file an injunction bond in the amount of $100,000.00 issued by a surety approved by the Clerk of the United States District Court for the Middle District of Florida.

3.  Defendants shall deposit, **no later than Monday, October 15, 2012**, collateral with Travelers in the amount of $300,000.00 as security against anticipated losses to be incurred by Travelers in connection with its issuance of the subject performance bond.

**DONE** and **ORDERED** in Orlando, Florida this 9th day of October, 2012.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

-10-